UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

THE HANOVER AMERICAN
INSURANCE COMPANY,                                    CASE NO. 18-cv-62168-CMA

    Plaintiff,

vs.

PYKE MECHANICAL INC.
and ANNETTE DAVIS, individually,

    Defendants.
_____/

### DEFENDANT, ANNETTE DAVIS' MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW

Defendant, ANNETTE DAVIS ("Davis"), by and through her undersigned attorneys, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7.1, submits this Motion for an Order granting Davis summary judgment in her favor and against Plaintiff, THE HANOVER AMERICAN INSURANCE COMPANY ("Plaintiff" or "Hanover").

In support of her Motion, Davis states that, based upon the accompanying Statement of Undisputed Facts (referred to as "SOF" and the appropriate paragraph "para.") and Memorandum of Law, she is entitled to summary judgment as a matter of law as: (1) the express terms of the "Virus or Bacteria Exclusions" contained in the primary and umbrella general liability insurance policies issued by Hanover to Pyke Mechanical, Inc. ("Pyke"): (a) on their face, supersede the terms of the "Total Pollution Exclusion Endorsement" and "Fungi and Bacteria Exclusion Endorsement" in the policies (D.E. 1 Ex. "A-F"; SOF para.15-18 ); and (b) fail to legally and factually counteract Florida's efficient proximate cause doctrine. Thus, Pyke's negligence in cleaning of the involved water cooling tower, is the efficient proximate cause of Davis's damages in the Underlying Action. (SOF para.3, deposition of Will Smythe, the Building Engineer for The Tides, held on November

**RITTER CHUSID, LLP, ATTORNEYS AT LAW**
HERON BAY CORPORATE CENTER • 5850 CORAL RIDGE DRIVE, SUITE 201 • CORAL SPRINGS, FLORIDA 33076 • 954-340-2200 • FAX 954-340-2210

1

1, 2018 in the Underlying Action [the "Smythe Depo"]).  As such, these resulting damages sustained by Davis are covered, even if the other mold-related claims in Davis's Complaint are not covered, based upon the "Virus or Bacteria Exclusions". (SOF para. 15-17). Alternatively, para. 2 and para. 4 of the "Virus or Bacteria Exclusions" are undeniably ambiguous. In addition, all of the Hanover policies issued to Pyke, a commercial HVAC contractor that regularly cleans and maintains water cooling towers, containing thousands of gallons of chemically treated water (D.E.1 Ex. "A", 8; SOF para.3), are illusory as they: (a) give the impression that they cover Pyke for its usual and expected everyday business activities; (b) create an internal contradiction in the Hanover policies by granting limited coverage for mold (the Limited Fungus Coverage Extension), but then deleting that coverage in other sections of the Endorsement. (D.E. 1; SOF par. 19). Thus, based upon the Hanover policies, the undisputed material facts, and the operative pleadings, Davis is entitled to: (a) summary judgment in her favor and against Hanover; (b) a finding by this Court that Hanover owes both a duty to defend and indemnify Pyke for Davis's damages in the Underlying Action; and (c) attorney's fees and costs for Davis's defense of this action. pursuant to Florida Statute Section 626.911, as Hanover is an Excess & Surplus Lines Insurer.

## STATEMENT OF FACTS

In the case at bar, Hanover seeks a declaration from this Court that it owes no duty to defend and indemnify its insured, Pyke ( the "Dec. Com.") with respect to the underlying personal injury and property damage action filed by Davis against Pyke, et.al. in the Circuit Court of the 17th Judicial Circuit, styled *Annette Davis v. The Tides at Bridgeside Square Condominium Association, Inc,, et al.* Case No. CACE-18-008519 (the "Underlying Action"). (SOF para.2). For purposes of this Motion, this Honorable Court is requested to determine the purely legal issue of interpretation of the "Total Pollution Exclusion Endorsement", "Fungi and Bacteria Exclusion", "Virus or Bacteria Exclusions" and other coverage extensions and deletions contained in the primary and umbrella

general liability insurance policies issued by Hanover to Pyke.

On April 10, 2018, Davis filed her complaint in the Underlying Action against Pyke, The Tides at Bridgeside Square Condominium Association, Inc. ("The Tides"), Akam On-Site Inc. ("Akam"), and Alliance Reconstruction, LLC ("Alliance"). (See Davis' Complaint [the "Dav. Com."] D.E. 1, Ex. "G", 1-8). The Dav. Com. alleges that on February 21, 2014, Pyke was negligent in its performance of an annual cleaning of the water cooling tower located on the roof of The Tides, (the "WCT"), which caused the main drain pipe of the WCT to break and resulted in a significant amount of water (between 20,000 to 25,000 gallons of water contaminated with caustic chemicals, muck, and algae) (the "Flood") to be dumped behind the drywall of the units below, including PH 8, PH 10, 1510 (collectively PH 8, PH 10, 1510 will be referred to as the "Other Units") and 1410 (the "Davis Unit"). (See Smythe Depo. SOF para.3; D.E. 1, Ex. "G", 14).

In connection with the Flood, Carmela Paladino, an employee of Akam, the Property Manager for The Tides, retained Alliance to perform emergency water extraction, a "dry-out" and mold prevention in the Davis Unit and the Other Units. (Dav. Com. [D.E. 1, Ex. "G", 15-16)]). As detailed in the Dav. Com., Alliance failed to properly dry-out the Davis Unit and Davis was unknowingly exposed to toxic levels of *Aspergillus* until it was discovered in April, 2017. [D.E. 1, Ex. "G", 21].

Before the Flood, Davis, now a forty three (43) year old female, was diagnosed with Chronic Fatigue Syndrome ("CFS"), MTHFR mutation, and severe immune suppression (collectively, Davis' CFS, MTHFR mutation, and severe immune suppression will be referred to as "Davis' Disability" [D.E. 1, Ex. "G", 11]. At the time of the Flood, Davis was stable and doing well on medication for Davis' Disability. *Id.* Shortly after the Flood, Davis' Disability went from being stable to extreme, as she developed gliotoxin toxicity, lost a significant amount of hair and weight, several of her teeth cracked, developed rashes and severe bowel problems when her immune system

**RITTER CHUSID, LLP, ATTORNEYS AT LAW**
HERON BAY CORPORATE CENTER • 5850 CORAL RIDGE DRIVE, SUITE 201 • CORAL SPRINGS, FLORIDA 33076 • 954-340-2200 • FAX 954-340-2210

3

became even more compromised due to her exposure to toxic levels of *Aspergillus*. *Id.* At that time, Davis' treating physicians, including her immunologist Dr. Irma Rey, could offer Davis no medical reason for this drastic decline in her health. *Id.*

It was not until April, 2017, that Davis discovered that Alliance failed to perform a proper dry-out of her unit and that she lived and breathed the toxic *Aspergillus* since the time of the Flood. [D.E. 1, Ex. "G", 21]. Davis belatedly discovered the *Aspergillus* when Expert Air Advice, Inc., who she retained to replace her own air conditioning unit, advised her that there was a prior major leak from above (from the Flood) into the duct work behind the north wall in the Davis Unit. *Id.*

Davis then reported the hidden water damage to The Tides and Akam who retained Florida Air Quality Solutions ("FAQS") to test for mold and perform a limited fungal contamination assessment of the Davis Unit. [D.E. 1, Ex. "G", 22]. Based upon their visual observations, mold spore sampling, including in the guest bedroom north wall, and fungal contamination assessment, FAQS concluded that the Davis Unit was affected by fungal contamination, including extremely high levels of *Aspergillus*. (A copy of FAQS July 12, 2017 Limited Fungal Contamination Assessment Report prepared for the Association and Akam [the "Report"] was annexed as Exhibit "A" to the Dav. Com., D.E. 1, Ex. "G"; SOF para.7). In the Report, FAQS recommended that The Tides and Akam retain a Licensed Mold Remediation Contractor to remove the north wall of the Davis Unit, perform proper mold remediation of the guest bedroom and closet and clean and remediate the potential bio contaminate fungal reservoirs in the entire Davis Unit. [D.E. 1, Ex. "G", 22].

On August 24, 2017, Davis retained Florida State Restoration Services, a Licensed Mold Remediation Contractor, who performed proper mold remediation, including removal and replacement of the drywall in the guest bedroom and closet on the north wall of the Davis Unit. (D.E. 1, Ex. "G", 23 and SOF para.8).

In an effort to determine the cause of Davis' decline, Davis' immunologist, Dr. Irma Rey,

Director of Medical Education at Nova Southeastern University, Diplomate American Board of Environmental Medicine and President of The American Academy of Environmental Medicine, conducted specialized laboratory tests on Davis. (D.E. 1, Ex. "G", 24; SOF para.9-10). The tests revealed that Davis was urine positive for gliotoxin, a toxin made by the *Aspergillus* species of mold, the very same mold found by FAQS behind the north wall of the Davis Unit. *Id.*

After she conducted additional laboratory testing, Dr. Rey determined that Davis required IVIG Therapy and she ordered that the IVIG Therapy be administered to Davis every three (3) weeks at an average cost of $13,000 for each infusion. (D.E. 1, Ex. "G", 25; SOF para.10). According to Dr. Rey, without the IVIG treatment, Davis would not have an immune system to continue living and Davis requires the same three week IVIG Therapy regimen for the rest of her life. *Id.*

In the Underlying Action, the Dav. Com. contains a single negligence cause of action against Pyke for failing to properly perform an annual inspection and cleaning of the WTC and allowing 20,000 to 25,000 gallons of contaminated water to enter behind the walls of the Other Units and the Davis Unit. (D.E. 1, Ex. "G", 60-64; SOF par.3). But for Pyke's negligence, the ensuing water damage, eventual infestation of *Aspergillus* in the Davis Unit, and significant life-long damages to Davis would have never occurred. *Id.*

As it relates to coverage for Pyke for Davis' claims, it is undisputed that Hanover issued three surplus commercial general liability policies to Pyke, policy numbers ZZJ970412703, ZZJ970412704 and ZJ970412705, policy periods December 30, 2013 through December 30, 2016, respectively, (the "Hanover Prim. Policies"). (*See* D.E., 1- 10-11; SOF para. 12]. Further, Hanover issued three umbrella policies to Pyke, policy periods of December 30,2013 through December 30, 2016, policy numbers UHJ970412903, UHJ970412904 and UHJ970412905, respectively(the "Hanover Umbrella Policies"). (*See* D.E. 1- 10-11; SOF para.12). (collectively the Hanover Prim.

Policies and the Hanover Umbrella Policies will be referred to as the ["Hanover Policies"]).

The Insuring Agreement in the Hanover Prim. Policies provides that the insurance applies to "bodily injury" or "property damage" only if: (1) the "bodily injury" is caused by an "occurrence" that takes place in the "coverage territory"; and (2) the "bodily injury" occurs during the policy period. (*See Id.*).

In relevant part, the Hanover Umbrella Policies contain Insuring Agreements that provide that the insurance applies to "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" only if: The "bodily injury" or "property damage" occurs during the policy period...." (*See Id.*).

For purposes of this Motion, the Hanover Prim. Policies contain two (2) operative Virus or Bacteria Endorsements. The First Virus or Bacteria Exclusion, (SOF para.15-16) provides:

**EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA**

This endorsement modifies insurance provided under the following:
COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** The exclusion set forth in Paragraph **B**. applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property....

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

However, this exclusion does not apply to loss or damage caused by or resulting from 'fungus', wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy.

**C.** With respect to any loss or damage subject to the exclusion in Paragraph **B.**, such exclusion supersedes any exclusion relating to "pollutants".

**D.** The following provisions in this Coverage Part or Policy are hereby amended to remove reference to bacteria:

>   **1.** Exclusion of "Fungus", Wet Rot, Dry Rot And Bacteria; and
>   **2.** Additional Coverage-Limited Coverage for "Fungus", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.
>
>   **E.** The terms of the exclusion in Paragraph **B.**, or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part or Policy.

Notably, the Second Virus or Bacteria Exclusion in the Hanover Prim. Policies, (SOF para.16) was expressly adopted from The American Association of Insurance Services Form Endorsement ("AAIS") which the insurance industry acknowledges was developed, "... in 2006 in light of the possibility of a pandemic of avarian flu and addresses contamination from any disease-causing agent, including, but not limited to, SARS, rotavirus, listeria, legionella and anthrax. " (*See Association Files to Exclude 'Virus or Bacteria' Related Diseases* in *The Insurance Claims Journal,* SOF para.17). In relevant part, the Second Virus or Bacteria Exclusion provides as follows:

**VIRUS OR BACTERIA EXCLUSION**

**AAIS**
**CL 0700 10 06**

>   The additional exclusion set forth below applies to all coverages, coverage extensions, supplemental coverages, optional coverages, and endorsements that are provided by the policy to which this endorsement is attached, including, but not limited to, those that provide coverage for property, earnings, extra expense, or interruption by civil authority.
>
>   1.   The following exclusion is added under Perils Excluded, item 1.:
>
>   **Virus or Bacteria**
>
>   2.   **Superseded Exclusions** - The Virus or Bacteria exclusion set forth by this endorsement supersedes the "terms" of any other exclusions referring to "pollutants" or to contamination with respect to any loss, cost, or expense caused by, resulting from, or relating to any virus, bacterium, or other microorganism that causes disease, illness, or physical distress or that is capable of causing disease, illness, or physical distress.

## DEFINITIONS

### Definitions Amended –

When "fungus" is a defined "term", the definition of "fungus" is amended to delete reference to a bacterium.

When "fungus" or related perils" is a defined "term", the definition of "fungus or related perils" is amended to delete reference to a bacterium.

## PERILS EXCLUDED

The additional exclusion set forth below applies to all coverages, coverage extensions, supplemental coverages, optional coverages, and endorsements that are provided by the policy to which this endorsement is attached, including, but not limited to, those that provide coverage for property, earnings, extra expense, or interruption by civil authority.

1. The following exclusion is added under Perils Excluded, item 1.:

    ### Virus or Bacteria –

    "We" do not pay for loss, cost, or expense caused by, resulting from, or relating to any virus, bacterium, or other microorganism that causes disease, illness, or physical distress or that is capable of causing disease, illness, or physical distress.

This exclusion applies to, but is not limited to, any loss, cost, or expense as a result of:
a. any contamination by any virus, bacterium, or other microorganism; or...

2. **Superseded Exclusions --**

The Virus or Bacteria exclusion set forth by this endorsement supersedes the "terms" of any other exclusions referring to "pollutants" or to contamination with respect to any loss, cost, or expense caused by, resulting from, or relating to any virus, bacterium, or other microorganism that causes disease, illness, or physical distress or that is capable of causing disease, illness, or physical distress....

## OTHER CONDITIONS

### Other Terms Remain in Effect –

The "terms" of this endorsement, whether or not applicable to any loss, costs, or expense, cannot be construed to provide coverage for a loss, cost, or expense that would otherwise be excluded under the policy to which this endorsement is attached.

In addition, the Hanover Prim. Policies contain the following Limited Fungus Coverage Extension and an Endorsement deleting that Extension, which provide the following:

3. **Limited Fungus Coverage–**

   a. **Coverage**- - 'We" pay for:

   (1) costs and expenses arising out of the presence of 'fungus' on covered property caused by or resulting from a covered peril; and

   (2) direct physical loss or damage to covered property caused by or relating to the existence of any activity of 'fungus'.

   b. **Coverage Limitation**– 'We " only provide the coverage described in item 3. a. above:

   1) when the 'fungus' is the result of:

   a) a 'specified peril' other than fire or lightning; or

   b) 'flood'( if Flood Coverage is provided under this policy);

   2) only if all reasonable steps were taken to protect the property from additional damage at or after the time of the occurrence.

   c. **Limited Fungus Coverage Limit–** The most 'we' will pay for all loss or damage covered by this Coverage Extension at all 'job sites' is $15,000....

Then after granting limited fungus coverage, the Hanover Policies completely negate that coverage by deleting the Limited Fungus Coverage Extension as follows:

**AMENDATORY ENDORSEMENT-FUNGUS EXCLUSION
AND LIMITED COVERAGE DELETED**

1. Under Coverage Extensions, the Limited Fungus Coverage Extension is deleted.

With regard to definitions, the Hanover Policies provide the following:

3. 'Fungus' means:

   a. a fungus, including but not limited to mildew and mold;...
   d. a bacterium; or
   e. a chemical, matter, or compound produced or released by a fungus,... bacterium, including but not limited to toxins, spores, ...such as microbial

       volatile compounds.

   7.    'Pollutant' means:

      a.    Any solid, liquid, gaseous, ...contaminant, including acids, akalis, chemicals, fumes, smoke, soot, vapor, and waste....

As it relates to the Hanover Umbrella Policies, the Hanover Prim.Policies are expressly listed in the Schedule of Underlying Policies, along with other Hanover policies issued to Pyke for commercial automobile coverage. (D.E. 1, Ex. "A-F").

For the reasons set forth above, and detailed below, it follows that if there is coverage available to Pyke under the Hanover Prim. Policies, there is also coverage available for Pyke under the Hanover Umbrella Policies. It defies logic and reason that all of Pyke's operative policies were written by Hanover and that only the Hanover Prim. Policies afford coverage for Davis's damages in the Underlying Action and the Hanover Umbrella Policies do not.

In the Dec. Com., the essence of Hanover's claim that there is no coverage available to Pyke. is that the Total Pollution Exclusions Endorsements and the Fungi and Bacteria Exclusion Endorsements exclude such coverage. (D.E. 1). Stated simply, however, all of these Exclusion Endorsements were expressly superseded by the Virus or Bacteria Exclusion Endorsements which: (a) fail to sufficiently counteract Florida's efficient proximate cause doctrine; and (b) do not exclude coverage for Pyke's negligence, its failure to properly clean the WCT and prevent the Flood from occurring, [D.E. 1, Ex. "G" 14]. Therefore, there is coverage available to Pyke for the Underlying Action based upon the efficient proximate cause doctrine. Further, all of the Hanover Commercial HVAC Contractor Policies are, almost by definition, illusory as they: (a) fail to cover Pyke's regular and customary business activities; and (b) grant by Extension Limited Fungus Coverage and then completely negate that coverage in other sections of the Hanover Policies, including the Amendatory Endorsement - Fungus Exclusion and Limited Coverage Deleted and the "Total Pollution Exclusion"

and the "Fungi and Bacteria Exclusion" (SOF para. 19). Thus, as a matter of law, there is coverage available for Pyke for the Underlying Action under all of the Hanover Policies.

## MEMORANDUM OF LAW

I. **DAVIS' MOTION FOR SUMMARY JUDGMENT ON HANOVER'S COMPLAINT SHOULD BE GRANTED.**

Under Federal Rule of Civil Procedure 56, summary judgment should be granted where the moving party shows there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Metz Wouters v. Martin County*, 9 F.3d 924, 928 (11th Cir. 1993). *cert. denied,* 513 S.Ct. 812 (1994); *see also Pape v. Local 390 of the International Brotherhood of Teamsters, et al*, 315 F. Supp. 2d 1297 (Fla. S.D. 2004). The "purpose" of summary judgment is to pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial. *Metz Wouters Id.* at 928. The moving party has the initial burden of proof and when the burden of proof has been met, the "burden shifts" to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clarke v. Coats & Clark, Inc.,* 929 F.2d 604, 609 (11th Cir. 1991). The "mere existence of a scintilla of evidence to support plaintiff's position will be insufficient. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Early v. Champion International Corp.,* 907 F.2d 1077, 1080 (11th Cir. 1990). For the reasons detailed below, Davis submits that there are no genuine issues of material fact and that she is entitled to summary judgment as a matter of law against Hanover.

A.  Standard for Insurance Policy/Contract Interpretation

It is well-established under Florida law that "[a]n insurer's duty to defend is broader than its duty to indemnify". *Colony Ins. Co. v. Montecito Renaissance, Inc.,* Case No.: 8:09-cv-1469-T-

30MAP, 2011 WL 4529948, at *14 (M.D. Fla. Sept. 30, 2011).  *See also Sinni v. Scottsdale Ins. Co.,* 676 F. Supp. 2d 1319, 1323 (M.D. Fla. 2009); *Allstate Ins. Co. v. RJT Enterprises, Inc.,* 692 So. 2d 142, 144 (Fla. 1997). "The decision of whether an insurer has a duty to defend is determined solely by the claimant's complaint if suit has been filed.'" *Nationwide Mut. Fire Ins. Co. v. Kaloust Financial, LLC,* Case No.: 8:12-cv-235-T-33MAP, 2012 WL 6589739, at *2 (M.D. Fla. Dec. 18, 2012) (citing *Higgins v. State Farm Fire & Cas. Co.,* 894 So. 2d 5, 9-10 (Fla. 2004)).

It has also been held that, "[a]n insurer's duty to defend against a legal action is triggered 'when the complaint alleges facts that fairly and potentially bring the suit within policy coverage.'" *Nationwide Mut. Fire Ins. Co.,* Case No.: 8:12-cv-235-T-33MAP, 2012 WL 6589739, at *2 (citing *Jones v. Fla. Ins. Guar. Ass'n, Ins.,* 908 So. 2d 435, 442-43 (Fla. 2005). Indeed, "[i]f the complaint alleges covered and non-covered claims, the insurer's duty to defend is triggered and the insurer is obligated to defend the entire suit. This is true even where the facts later show there is no coverage"). *Id.* Here, the Dav. Com., on its face, triggers coverage for Pyke for its negligence giving rise to Davis' damages and Hanover's relied upon Exclusions do not apply.

B.  The Plain Language of The Virus and Bacteria Exclusions Control

Under controlling law, insurance contracts must be construed according to their plain meaning. *See Empire Indemnity Insurance Company v. Winsett,* 325 Fed. Appx. 849 (11th Cir. 2009).  "A policy provision should be enforced, whether it is a basic policy provision or an exclusionary provision, if it is clear and unambiguous." *Falcon Trust Group, Inc. v. Travelers Cas. & Sur. Co. of Am.,* 725 F. Supp. 2d 1363, 1367 (S.D. Fla. 2010). "[A] court should construe each sentence in connection with the other provisions of the policy to arrive at a reasonable construction that accomplishes the intended purpose of the parties." *Continental Cas. Co. v. City of Jacksonville,* 654 F. Supp. 2d 1338, 1348 (M.D. Fla. 2009).  "Courts should not interpret any clause of a contract

in a manner which destroys the meaning of any other provision." *Id. See also City of Delray Beach v. Agricultural Ins. Co.,* 85 F.3d 1527, 1535 (11th Cir. 1996) ("no clause should be interpreted in a manner which eviscerates any other provision."). Applying these principles to the matter at hand, it is abundantly clear that the plain language of the two (2) Virus and Bacteria Exclusion Endorsements, not the Total Pollution Exclusions Endorsements and/or the Fungi and Bacteria Exclusion Endorsements, are controlling in this Courts' interpretation of the Hanover Policies. To this point, the Second Virus or Bacteria Exclusion in the Hanover Policies expressly states that, "The Virus or Bacteria exclusion set forth by this endorsement supersedes the 'terms' of any other exclusion referring to 'pollutants' or to contamination with respect to any loss,...caused by, resulting from, cor relating to any...microorganism that causes disease, illness, or physical distress or that is capable of causing disease, illness or physical distress". (Emphasis added). According to the Mold Institute USA, and as confirmed by Webster's Dictionary, "microorganisms" are defined as living cells that are too small to be seen by the naked eye, must be seen through a microscope and include mold and bacteria. (***Mold Institute USA, Microbes, Mold & Your Health***, www.moldinstituteusa.com, SOF para.18). Thus, the undeniable intent of the Second Virus or Bacteria Exclusion was to supersede the Total Pollution and Fungi and Bacteria Exclusion Endorsements as it relates to coverage exclusions for "microorganisms", such as the *Aspergillus* species of mold that resulted in Davis' damages detailed in the Dav. Com. (D.E.1).

Davis does acknowledge that para. 4 of the Second Virus or Bacteria Exclusion indicates that "[T]he terms of this endorsement...cannot be construed to provide coverage for a loss, cost or expenses, cannot be construed to provide coverage for a loss...that would otherwise be excluded under the policy..." However, Hanover can not reasonably dispute that: (1) if para. 4 was intended to mean that there is no coverage for fungus/mold because it is excluded under the Fungi or Bacteria

Exclusion, then para. 2 would be rendered meaningless because the Virus or Bacteria Exclusions would not supersede the very exclusions they were expressly intended to exclude, that is, the Pollution and Fungi or Bacteria Exclusions; and (2) the terms of the Virus or Bacteria Exclusions were meant to have their plain and ordinary meaning, that is to supersede the Pollution and Fungi or Bacteria Exclusions.  To interpret para. 4 otherwise would destroy the meaning of para. 2. *See, City of Delray Beach*, 85 F.3d at 1535.  At the very minimum, there is an undeniable ambiguity in the Second Virus or Bacteria Exclusion as to whether it was intended to supersede the Pollution and Fungi or Bacteria Exclusion Endorsements. Therefore, these ambiguous exclusionary provisions must be construed against Hanover in favor of coverage as the language is susceptible to more than one reasonable interpretation. *See Szczeklik v. Mackel International Ins. Co., Ltd.*, 942 F. Supp 2d 1254, 1259-60 (M.D. Fla. 2013). (Exclusionary clauses are generally disfavored and construed more strictly than coverage clauses citing *Hartford Dec. and Indemn. Co. v. Beaver*, 466 F.3d 1289, 1296 (11th Cir. 2006) and *Penzer v. Transp. Ins. Co.,* 545 F.3d 1303, 1309 (11th Cir. 2008)).

Although Hanover may contend that the First and Second Virus or Bacteria Exclusions Endorsements apply to property damage claims only, which Davis vigorously disputes, the Second Virus or Bacteria Exclusion in the Hanover Prim. Policies was expressly adopted from the AAIS Endorsement Form which was developed to address bodily injury claims and contamination from disease causing agents, such as mold, and not just property damage. (*See* SOF para. 17).

Further, the First Virus or Bacteria Exclusion was expressly intended to cover Commercial Property claims; if the Second Virus or Bacteria Exclusion is interpreted to cover only property damage, and not bodily injury claims, there would be no need for this Second Exclusion and it too would be meaningless.

    C.    <u>There is Coverage for Davis's Damages in The Underlying Action Based Upon Florida's Efficient Proximate Cause Doctrine.</u>

Under Florida's efficient proximate cause doctrine, <u>if the efficient proximate cause, i.e. a cause that sets other causes of action in motion, is covered under an insurance policy, then the resulting loss will be covered even if the other causes that are not covered contribute to the loss.</u> (Emphasis added). *See Empire Indem. Ins. Co.* 325 Fed. Appx at 851*; Bartram, LLC,* 864 F. Supp. 2d at 1229.

In order for an exclusion to counteract Florida's efficient proximate cause doctrine, it must contain specific language which excludes coverage, " [c]aused directly or indirectly by Windstorm or Hail (the named Exclusion), regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage..." *See Bartram, LLC,* 864 F. Supp. 2d at 1234 citing *Empire Indem. Ins. Co.* 325 Fed. Appx at 851. Here, it is plainly obvious that the First and Second Virus or Bacteria Exclusion Endorsements fail to contain the requisite language crafted to counteract Florida's efficient proximate cause doctrine. Indeed, these Exclusions do not provide that coverage for virus, bacteria or other microorganisms, such as *Aspergillus,* are excluded if the <u>damages are caused directly or indirectly by the virus, bacteria or other microorganisms, regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.</u> (Emphasis added) *Id.* As the Hanover Prim. Policies and the Hanover Umbrella Policies fail to contain the mandated language, the initial negligence of Pyke in failing to prevent the Flood from occurring, including leakage of 20,000 to 25,000 gallons into the walls of the Davis Unit, there is coverage for Davis's damages under the efficient proximate cause doctrine, even though the mold-related damages are arguably not covered under the First and Second Virus or Bacteria Exclusion Endorsements. (SOF para. 3).

In addition, the Hanover Policies were issued to Pyke, a commercial HVAC contractor that

regularly and as an integral part of its business: (a) uses pollutants and chemicals, such as freon; and (b) cleans and maintains water cooling towers containing thousands of gallons of chemically treated water [D.E. 1, Ex. "A", 8]. Davis submits that these Hanover Policies are illusory as they give the impression that they cover Pyke for its everyday business, however, if Hanover's position is accepted by this Court, there would be no coverage for incidents arising out of Pyke's use of freon and services performed on chemically treated water cooling towers. Further, a finding of no coverage under the Hanover Policies simply ignores the ambiguity in the policies as they grant limited coverage for mold (the Limited Fungus Coverage Extension), but then exclude that same coverage in other sections of the policies, the Amendatory Endorsement -Fungus Exclusion and Limited Coverage Deleted and the "Total Pollution Exclusion" and the "Fungi and Bacteria Exclusion" (SOF para. 19). *See, e.g. The Warwick Corp. v. Turetsky*, 42 Fla. L. Weekly D. 1797a (Fla. 4th DCA 2017) and *Tire Kingdom, Inc. v. First S. Co.*, 573 So.2d 885, 887 (Fla. 3rd DCA 1990). ("A policy is illusory only if there is an internal contradiction that negates the coverage it expresses to provide"). In fact, if a policy grants coverage in one section (the Limited Fungus Coverage Extension), then excludes the same coverage in another Section (the Amendatory Endorsement -Fungus Exclusion and Limited Coverage Deleted and the Total Pollution and Fungi and Bacteria Exclusions), the coverage is illusory. *Tire Kingdom*, *Id*. and *The Warwick Corp.*, 42 Fla. L. Weekly at D1797a. Thus, the Hanover Policies grant of coverage in one part, then exclusion of that coverage in another part, is illusory. Further, the exclusion of coverage for Pyke's regular business services is the proverbial "sale of ice in the winter" and is therefore illusory. *Id.*

D. <u>Davis is Entitled To Summary Judgment For Coverage Of The Underlying Action Under The Hanover Policies.</u>

Here, as noted above, the Hanover Policies must be construed according to their plain meaning. *See Taurus Holdings, Inc.,* 913 So. 2d at 532. "A policy provision should be enforced,

whether it is a basic policy provision or an exclusionary provision, if it is clear and unambiguous." *Falcon Trust Group, Inc. v. Travelers Cas. & Sur. Co. of Am.,* 725 F. Supp. 2d 1363, 1367 (S.D. Fla. 2010). *Id. See also City of Delray Beach v. Agricultural Ins. Co.,* 85 F.3d 1527, 1535 (11th Cir. 1996) ("no clause should be interpreted in a manner which eviscerates any other provision.").

Indeed, the Hanover Prim. Policies undeniably contain the First and Second Virus or Bacteria Exclusion Endorsements. [*See* D.E. 4-3]. The letter and spirit of these Exclusions results in coverage for Davis's damages in the Underlying Action based upon Florida's efficient proximate cause doctrine as it is abundantly evident that Pyke's initial negligence in cleaning the Water Cooling Tower was the cause that set the other Defendants, The Tides, Akam and Alliance's, negligence into motion which resulted in Davis's devastating injuries and damages. In addition, as detailed above, the Hanover Policies, are, at the very minimum, ambiguous and illusory by their own controlling provisions.

Accordingly, based upon the pleadings, SOF and exhibits, documents incorporated by reference, and well-established case law, Hanover has both the obligation to defend and indemnify Pyke in the Underlying Action.

## CONCLUSION

**WHEREFORE,** based on the aforesaid, Davis respectfully requests that this Honorable Court enter an Order: (1) granting her motion for summary judgment under Rule 56; (2) finding that Hanover owes both a duty to defend and indemnify Pyke for Davis's damages in the Underlying Action; (3) entitling Davis to attorney's fees and costs for Davis' defense of this action, pursuant to Florida Statute Section 626.911, as Hanover is an Excess & Surplus Lines Insurer: and (4) granting such other and further relief that this Court deems just and proper.

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that on this **11th** day of February, 2019, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF. We also certify that a true and correct copy of the foregoing document is being served this day on all counsel of record **via transmission of Notices of Electronic Filing generated by CM/ECF and/or United States Mail (for those parties not on the CM/ECF system).**

          RITTER CHUSID, LLP
          Attorneys for Annette Davis
          5850 Coral Ridge Drive, Suite 201
          Coral Springs, Florida 33076
          Telephone:     (954) 340-2200
          Facsimile:      (954) 340-2210

By:     */s/ Mitchel Chusid*
          Mitchel Chusid, Esq.
          Florida Bar No.: 879282
          mchusid@ritterchusid.com
          Gary S. Rosner, Esq.
          Florida Bar No.: 0142522
          grosner@ritterchusid.com
          Jeffrey M. Glotzer, Esq.
          Florida Bar No.: 184489
          jglotzer@ritterchusid.com